# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

POLLY T. TAFOYA,

       Plaintiff,

v.                                                                   CV 11-0077 WPL/WDS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER

Polly T. Tafoya filed applications for Disability Insurance Benefits and Supplemental Security Income payments on June 20, 2008. (Administrative Record ("A.R.") at 12, 174.) She alleged she had been disabled since June 17, 2008[1], due to arthritis, degenerative disk disease, and fibromyalgia. (Doc. 17 at 1-2.) Administrative Law Judge ("ALJ") William Helsper held a hearing on January 6, 2010. (A.R. at 25.) He determined that Tafoya was not under a disability as defined by the Social Security Act and therefore not entitled to benefits. (A.R. at 12-13.) Both applications were denied. (A.R. at 12.) Tafoya submitted additional evidence to the Appeals Council, but it declined Tafoya's request for review, making the ALJ's decision the final decision of the Social Security Administration ("SSA"). (A.R. at 1-5, 430-37.)

Tafoya sought a review of the SSA's decision on January 1, 2011 (Doc. 1), and filed a motion to reverse and remand for payment of benefits (Doc. 17). The Commissioner of the SSA

---

[1]Tafoya chose June 17, 2008, as her onset date because she received a hearing decision denying a previous application on June 16, 2008, which she chose not to appeal. (A.R. at 12.) References made to medical documents dated before June 17, 2008, are done for historical reasons, and are not intended to reopen the prior claim. (*Id.*)

("Commissioner") responded (Doc. 18), and Tafoya filed a reply. (Doc. 19). Pursuant to 28 U.S.C § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to have me serve as the presiding judge and enter a final judgment. After having read and carefully considered the entire record, I grant Tafoya's motion and remand the case for further consideration consistent with this opinion.

## STANDARD OF REVIEW

In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). A "decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* (quotation omitted). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *See id.* I may reverse and remand if the ALJ has failed "to apply the correct legal standards, or to show us that she has done so." *Winfry v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## FACTUAL BACKGROUND

Tafoya is a fifty-five year-old former housekeeper suffering from chronic back, neck, leg, and hand pain, difficulty sleeping, nausea, vomiting, anxiety, and depression. (Doc. 17 at 1-2; A.R. at 13, 27-40, 48-58.) Her current medical problems began in 2006. (A.R. at 29, 249.) Since then, she has tried a number of medications and has seen many health practitioners. (A.R. at 13-17.) I believe it is unnecessary to recount her entire medical history, so I will only discuss several of the pertinent records.

2

In July 2007, Tafoya saw Dr. Belyn Schwartz of Rehabilitation Medicine Associates of Northern New Mexico. (A.R. at 262.) Dr. Schwartz reviewed the findings of a May 2007 M.R.I., which revealed "significant disc pathology in both the cervical and lumbar spine" including some disc space narrowing and degenerative disc space changes. (*Id.*) During the physical examination, Dr. Schwartz also noted that Tafoya was "groaning and moaning," had "bags under her eyes," appeared depressed, and was "generally deconditioned" in appearance. (*Id.*) The doctor found that Tafoya was tender in sixteen of the eighteen sites consistent with fibromyalgia,[2] but that her gait, muscle strength, and flexion were fairly normal. (A.R. at 263.) Dr. Schwartz concluded Tafoya was likely depressed and probably had fibromyalgia. (*Id.*)

In 2007 and 2008, Tafoya's doctors prescribed physical therapy. She first attended Taos Orthopedic Institute, and upon discharge in October 2007she still had tenderness in her neck, and diffuse pain in her shoulder and back, with no specific point of pain. (A.R. at 268.) Reports from Morning Light Physical Therapy for Women, which Tafoya attended in 2008, are similar. Upon initial evaluation, physical therapist Kathleen Alcon noted that Tafoya seemed depressed, and she had bad postural alignment, a limp, limited range of motion in her lumbar and cervical spine, and tenderness to palpatation throughout her shoulders, back, and buttocks. (A.R. at 274.) At discharge Tafoya had reportedly made some improvements, although she still walked with a mild limp, had a twenty-five percent limitation in her range of motion in her cervical spine, and had muscle spasms in her upper back. (A.R. at 271.)

---

[2]Fibromyalgia is a syndrome of chronic pain. STEDMAN'S MEDICAL DICTIONARY 671 (27th ed. 2000). To have fibromyalgia, there must be pain in at least eleven of the eighteen identified "tender points." *Id*. To diagnose the points, the physician will press on the point with her finger to see if the patient flinches or draws back. The Honorable David J. Agatstein, *Beyond the Threshold: Wincing at Social Security's Process of Evaluating Pain*, 17 J. NAT'L ASS'N ADMIN. L. JUDGES 231, 251 (1997).

In the summer of 2008, Tafoya was referred to Dr. Fredrica Smith. On the initial evaluation, Dr. Smith also noted that Tafoya "tends to groan and sigh as she moves" and that she had "multiple tender trigger points," but her physical exam was otherwise normal. (A.R. at 314-15.) Dr. Smith recommended that Tafoya resume exercise, even though the pain might persist. (A.R. at 315.) Tafoya saw her again in September 2008, and, at that time, Dr. Smith reported that she was able to walk and move around the office and her joints and strength were normal, but "almost all trigger points" were tender to a light touch. (A.R. at 312.)

On September 8, 2008, Michael Cummings, Ph.D., performed a mental status examination at the request of the Disability Determination Services. (A.R. at 286-289.) Dr. Cummings diagnosed Tafoya with an unspecified depressive disorder and noted that she was anxious and despondent. (A.R. at 288.) He also opined that she was not limited in her ability to understand and remember very short instructions and only moderately limited in her ability to carry out instructions or attend and concentrate. (A.R. at 289.)

Dr. Marshall Reich performed another physical evaluation of Tafoya on September 16, 2008. At that time, he diagnosed her with fibromyalgia and "[s]ympathetic hyper-reaction." (A.R. at 311.) Dr. Reich noted her behavior during the evaluation, commenting that "she sighs as she moves around at all times and exemplifies someone with a sympathetic overreaction with very wet, cold hands and feet." (A.R. at 309.) During the physical exam, he found mild tenderness in her cervical spine, no swelling in any of the joints, and no loss of the natural curvature of her spine. (A.R. at 310-11); STEDMAN'S MEDICAL DICTIONARY 1032 (27th ed. 2000).

On September 17, 2008, Dr. Margaret E. Vining completed a Physical Residual Capacity Assessment of Tafoya for the SSA. (A.R. at 316-23.) In this report, Dr. Vining opined that Tafoya could occasionally carry up to twenty pounds, frequently carry up to ten pounds, stand or walk for

4

up to six hours in an eight hour work day, and sit for about six hours in a work day. (A.R. at 317.)

The following year, Tafoya underwent more aggressive treatment for her pain, including trigger point injections, epidural steroid injections, and surgery. (A.R. at 381, 387, 389-90, 392, 394.) She began seeing Dr. Crawford in June 2009, and he performed a foraminotomy on her spine on August 12, 2009. (A.R. at 392-97, 431.) On her first post-surgical visit, Tafoya reported that she was doing "remarkably well" after the surgery. (A.R. at 393.) On her second visit, Kari Thomas, a physician's assistant, noted that Tafoya was "a very pleasant individual" and that she claimed her pain had improved remarkably. (A.R. at 392.) However, by January 2010, Tafoya's pain had become "unbearable." (A.R. at 428.) Dr. Crawford performed another physical examination of Tafoya, and her neck, legs, strength, and gait seemed normal. (A.R. at 428.)

On March 21, 2010, after the ALJ issued his opinion, Dr. Crawford completed a Lumbar Spine Impairment Questionnaire, which Tafoya submitted to the Appeals Council. (A.R. at 430.) According to Dr. Crawford, in an eight hour work day, Tafoya can sit for one to two hours, stand for one to two, frequently lift or carry up to ten pounds, occasionally lift or carry up to twenty pounds, and should never bend or stoop. (A.R. at 436.) He opined that Tafoya would likely miss work more than three times per month. He believed that the limitations he described began in "mid 2009," which is when he began treatment. (A.R. at 436.)

### HEARING TESTIMONY

On January 6, 2010, the ALJ held a telephonic hearing at which both Tafoya and Judith A. Beard, a vocational expert ("VE"), testified. (A.R. at 25.) Tafoya testified that she was able to walk around her house, prepare light meals, and do some basic cleaning with the help of her sister. (A.R. 29-32, 37.) Tafoya claimed that "everything" was in pain and would go numb, and the ALJ cautioned her not to exaggerate. (A.R. at 34-35.) Approximately half way into the hearing, Tafoya

5

asked to stand. (A.R. at 36.)

After questioning Tafoya, the ALJ questioned the VE regarding Tafoya's ability to work as a housekeeper. The VE testified that she had reviewed Tafoya's file and determined she was capable of work classified as "SVP two[3], unskilled, light." (A.R. at 41.) The ALJ asked the VE if a hypothetical individual with a RFC for light work, a limited education, and a requirement that the work be non-complex, involve things instead of people, and have no independent judgement would be able to meet the functional requirements of housekeeper. (*Id.*) The VE replied in the affirmative. (*Id.*) However, on cross examination she stated that a person with a sedentary RFC could not perform the job. (*Id.*)

## THE ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ found that Tafoya suffers from chronic low back pain due to foraminal stenosis of the left L4-5 and a herniated disk, neck pain due to cervical spondylosis at C5-6, fibromyalgia, anxiety, and major depressive disorder. (A.R. at 13.) The ALJ first concluded that Tafoya did not have a severe impairment or combination of impairments which met the criteria of listed impairments under Appendix 1 of the SSA's Regulations. (A.R. at 13.) Additionally, the ALJ felt that Tafoya lacked credibility, believing that she over-exaggerated her symptoms because she reportedly groaned and moaned at office visits, even though physical examinations showed she was neurologically intact and X-rays did not reveal "anything significant." (A.R. at 13-15, 17.) Based on these findings and a review of the record, the ALJ found that Tafoya has the RFC for light work, she is limited to non-complex tasks, and can only perform jobs which allowed her to work with things rather than people. (A.R. at 17-18.) Relying on this RFC and the testimony of the VE, the ALJ

---

[3]Specific Vocational Preparation Level 2, which requires a short demonstration and 30 days to learn. 1 SOCIAL SECURITY CLAIMS AND PROCEDURES § 8:164 (6th ed. 2011).

concluded that Tafoya could perform her past relevant work as a housekeeper. (A.R. at 18-19, 41.) He determined that since she could return to her past work, Tafoya was not disabled under the meaning of the Social Security Act and not entitled to benefits. (A.R. at 19.)

Tafoya appealed the decision, and she submitted the March 2010 evaluation by Dr. Crawford to the Appeals Council. (A.R. at 430). The Council found that the additional information did not justify a review of the ALJ's decision, thus rendering ALJ's decision the final decision of the Commissioner. (A.R. at 1.)

### SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At the first three steps, the ALJ considers the claimant's work activity and the medical severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520 (a)(4), 416.920 (a)(4).  In the fourth step, the ALJ considers the claimant's residual functioning capacity ("RFC") and functional requirements of past relevant work to see if the claimant is still capable of performing his or her past job. *Id.* If a claimant is not prevented from performing her past work, then she is not disabled. *Id.* If the claimant cannot return to her past work, then the Commissioner must show at the fifth step that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25. *See also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail). The claimant bears the burden of proof on the question of disability for the first four steps, and then it shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

**DISCUSSION**

Tafoya raises four challenges to the ALJ's decision to deny benefits.[4] All four of these challenges fall within the fourth step of the sequential evaluation process, in which the ALJ considers an assessment of the claimant's RFC and the individual's past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545 (a), 416.920 (a), 416.945; BLOCH ON SOCIAL SECURITY § 3:7 (2011). Step four has three phases: evaluation of the claimant's physical and mental RFC; determination of the physical and mental demands of the claimant's past relevant work; and determination of whether the claimant can meet the job demands despite her RFC. *Winfry*, 92 F.3d at 1023.

Tafoya's first three challenges are to the ALJ's RFC determination at phase one. According to Tafoya, he erred in assessing her credibility, he did not provide a function by function assessment, and his determination is not substantiated by substantial evidence. Tafoya's last challenge is to the ALJ's determination at phase two of step four, in which he determined that her relevant past work as a housekeeper was "light."

I find that the ALJ has committed error at phase one of the RFC determination which warrants reversal and remand. However, I will continue to discuss errors at phase two of step four and by the Appeals Commission and make recommendations as to how the ALJ should proceed on remand.

I. Challenges to Phase One: Determining the RFC

The ALJ, after reviewing Tafoya's medical history, testimony, and the VE's testimony, concluded that Tafoya had an RFC for light work. (A.R. at 17.) Tafoya challenges this conclusion

---

[4]For the sake of clarity, I have reorganized Tafoya's claims and condensed several of them into one.

8

on three grounds. First, she claims that the ALJ applied an incorrect legal standard when discussing her impairments caused by fibromyalgia, which led to an erroneous determination of Tafoya's credibility and her pain. (Doc. 17 at 11-12, 17, 18.) Procedurally, Tafoya argues that the ALJ's failure to provide a function-by-function assessment to support his light work determination is an error as a matter of law. (*Id.* at 9.) Lastly, she claims that the ALJ failed to properly consider evidence of her exertional and non-exertional limitations. (*Id.* at 8.)

### A. *Fibromyalgia, Pain, and Credibility*

Tafoya argues that the ALJ committed reversible error by discounting her fibromyalgia and making findings that her statements of pain "are not entirely credible in light of the objective medical evidence." (Doc. 17 at 17-18; A.R. at 17.) The ALJ did not explicitly discuss fibromyalgia in making this finding, although he did note that she had been diagnosed with the disorder. (A.R. at 12, 13.) While Tafoya presents the issues of pain, credibility, and fibromyalgia separately on appeal, I will deal with them together because they are intrinsically interrelated.

Fibromyalgia is a unique disorder with an uncertain origin that causes chronic pain. *See Brosnahan v. Barnhart,* 336 F.3d 671, 672 n.1 (8th Cir. 2003); STEDMAN'S MEDICAL DICTIONARY 671 (27th ed. 2000). In both the medical and legal fields, there is a controversy as to whether the disorder even exists since there are no objective or visible signs of the disease and most medical testing such as blood tests and x-rays appear relatively normal. *See* The Honorable David J. Agatstein, *Beyond the Threshold: Wincing at Social Security's Process of Evaluating Pain*, 17 J. NAT'L ASS'N ADMIN. L. JUDGES 231, 249-50, 274-75 (1997)(discussing the difficulty of diagnosing and assessing fibromyalgia); Gene Stevens Connolly, *Hidden Illness, Chronic Pain: The Problems of Treatment and Recognition of Fibromyalgia in the Medical Community*, 5 DEPAUL J. HEALTH CARE L. 111, 111-12 (2001). Doctors rely on the patient's statements and reactions to palpatations

at various trigger points to diagnose the disorder. *Id.*

The SSA considers pain a symptom, and claimants seeking disability benefits on the basis of pain generally must present objective medical evidence of a underlying condition that confirms the severity of the allegedly disabling pain. *See* 20 C.F.R.§§ 404.1529, 416.929. Once a claimant establishes a medically determinable underlying condition, though, objective evidence of pain is not required to prove that the pain is severe enough to justify benefits. *Winfrey*, 92 F.3d at 1020 (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993)); *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir.1987).

Essentially, the medically accepted method of diagnosing the disease presents a legal problem: pain indicates whether there is an underlying condition, but, to show a disability, the claimant must establish an underlying condition to prove he is in pain. The doctor must rely on the statements of the claimant as to whether there is pain at a given area, but if the ALJ finds that the claimant is not credible, that finding calls into question the diagnosis. This naturally impacts the outcome of the RFC determination, since the severity of the disease and the pain are factors the ALJ must consider. *See* 20 C.F.R. §§ 404.1545(e), 416.945 (a)(3). Thus, I will discuss the ALJ's analysis of Tafoya, her pain, and her medical condition as part of her challenge to the first phase of step four in which the ALJ must assess her RFC.

Other circuits have developed a rule as to how best to approach a diagnosis of fibromyalgia. The Second, Sixth, Seventh, Eight, and Ninth Circuits have held that for claimants with fibromyalgia, the ALJ may not discredit a claimant's subjective complaints of pain simply because there is no objective medical evidence. *Benecke v. Barnhart*, 379 F.3d 587, 593-94 (9th Cir. 2004); *Green-Younger v. Barnhart*, 335 F.3d 99, 108-09 (2d Cir. 2003); *Brosnahan,* 336 F.3d at 677-78 ; *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *Preston v. Sec'y of Health & Human Servs*., 854

F.2d 815, 818 (6th Cir. 1988).

In the Tenth Circuit, an unpublished opinion follows the same rule, emphasizing the importance of trigger point evaluations and injections as a credible indication that the claimant has the disorder. *Moore v. Barnhart,* 114 F. App'x 983, 993 (10th Cir. 2004) (unpublished). Very recently, though, this circuit handed down another unpublished opinion which might indicate a move away from a subjective standard for assessing pain associated with fibromyalgia. *Willig v. Astrue*, No.10-5151, 2011 U.S. App. LEXIS 18719 (10th Cir. Sept. 8, 2011) (unpublished). *Willig* affirmed the district court's order denying disability benefits. *Id.* at *3 ( the "opinion and order is thorough, well-reasoned, and persuasive on each point argued... [we affirm] for substantially the same reasons"). The claimant had complained of fibromyalgia, but the ALJ found that there was no objective medical evidence to justify her pain, so he denied the claim. *Id.* The Tenth Circuit affirmed, noting that it was proper for the ALJ to find the claimant lacked credibility due to the absence of supporting medical evidence. *Willig v. Astrue*, No. 09-CV-470-TLW, 2010 U.S. Dist. LEXIS 102641, *14 (N. D. Okla., Sept. 28, 2010). However, the facts of *Willig* indicate not just an absence of medical evidence, but also an absence of medical records to even support claims of medication use and past injuries. *Id.* at *13. Ultimately the ALJ's credibility determination was grounded on far more than a lack of supporting x-rays or blood work; it was grounded in a story with a significant number of holes.

The case law above paints a compelling picture that the trend is to acknowledge the limitations of objective evidence in cases of fibromyalgia. I will apply the rule used in *Moore* and in our sister circuits, which holds that an ALJ may not require objective evidence of fibromyalgia in order to assess its contribution to a claimant's RFC. However, should the ALJ base his credibility assessment and pain determination on additional substantial evidence, then his findings will be

upheld.

The courts generally defer to the ALJ in credibility determinations, although the determination "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citations omitted). When making a credibility determination regarding a claimant's alleged pain, the ALJ should consider

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* Because credibility determinations are the "province of the finder of fact," I must defer to the ALJ so long as there is substantial evidence to support his findings and it is not overwhelmed by contradictory evidence. *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir. 1994); *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1989.) This rule applies even if there is substantial evidence to support the plaintiff's claim. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)

I find that the ALJ did not err in his credibility and pain determinations. While his decision relied, in part, on the absence of objective medical evidence for her pain, he also considered a number of other factors which rise to the level of substantial evidence. (Doc. 18 at 9-10.) Tafoya testified that during the day she walks around the house, prepares meals, washes dishes, and does laundry with the help of her sister. (A.R. 17, 30-31, 37.) Medical records noted that she would moan and groan during doctor's visits, which the ALJ believed was to exaggerate her symptoms. (A.R. at 17, 262, 314, 309.) She claimed to be constantly nauseous and throwing up, but she had only lost a few pounds. (A.R. at 17, 32-33, 50.) She claimed she could lift only one pound, even though

available medical evaluations state she could lift up to ten pounds frequently. (A.R. at 17, 39, 317, 434.) She has never been to a mental health specialist to seek help for her anxiety or depression. (A.R. at 17.) All of these factors present more than a "scintilla of evidence" in support of the ALJ's belief that Tafoya was exaggerating her symptoms and lacked credibility. *Hamlin*, 365 F.3d at 1214.

Just as there is evidence to support the ALJ's findings, there is evidence on the record to support Tafoya's claims of pain, including her trigger point and spinal injections (A.R. at 381, 387), surgery (A.R. at 394), continuous attempts to seek medical help (A.R. at 181-85, 241-437), physical therapy (A.R. at 271-79, 402-26), prescription pain killers (A.R. at 185, 224), and even letters in support of her character from her sister, son, and former co-worker (A.R. at 226-231). However, an ALJ's determination will stand even when there is evidence to support a contrary position so long as it does not overwhelm the ALJ's evidence. This evidence does not overwhelm the evidence on which the ALJ relies since he has cited several specific facts which do suggest Tafoya was exaggerating. Accordingly, I uphold the ALJ's credibility determination.

### B. Function-by-Function Assessment

In assessing Tafoya's RFC, the ALJ did not make a function-by-function assessment; rather, he summarized the medical testimony and concluded that Tafoya could perform light work. (A.R. at 16-19.) I find that this determination is not procedurally sufficient and must be corrected on remand.

The RFC is a measure of the maximum that a claimant can do physically and mentally on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ is responsible for making a RFC determination at step four based on evidence of exertional and non-exertional impairments. *See* 20 C.F.R. § 404.1445(a)(4) ("[W]e will consider your ability to meet the physical, mental, sensory, and other requirements of work"). Social Security Ruling ("SSR")

96-8p provides guidance on how the ALJ is to approach this determination. SSRs are binding on the SSA, and, while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See* 20 C.F.R. § 402.35; *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990). *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 559 (6th Cir. 1995) (SSRs entitled to deference); *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995) (same); *Fair v. Shalala*, 37 F. 3d 1466, 1469 (11th Cir. 1994) (same).

According to SSR 96-8p, the ALJ must first perform a function-by-function assessment to see if the claimant can do her past relevant work as she actually performed it. SSR 96-8p at \*1. The ALJ may express the RFC in terms of an extertional category, such as "sedentary," "light," "medium," or "heavy" if it becomes necessary to determine whether the claimant can do her past work as it is generally performed in the national economy, which is a phase three determination. *Id.* at \*3. However, before classifying a claimant's exertional level, the ALJ must assess the individual's capacity to perform seven different strength functions: sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id.* at \*3, \*5.

Whether this SSR has been interpreted to require a strict, seven-part assessment, or only a narrative generally addressing impairments, is unclear. Several unpublished decisions in this circuit have found that a failure to discuss each function separately per SSR 96-8p guidance is erroneous. *See Southard v. Barnhart*, No. 02-7102, 72 F. App'x 781, 784-85 (10th Cir. 2003) (unpublished) (remanded case in part because ALJ only made specific findings regarding ability to lift or carry); *Diggdon v. Apfel,* No. 98-5207, 1999 U.S. App. LEXIS 19248, at \*7 (10th Cir. Aug. 16, 1999) (unpublished) (RFC must contain function-by-function assessment). However, some of our sister circuits disagree with the rigidity of this approach. Instead, they have found that the ALJ need only

14

discuss the relevant limitations and functional impairments, and that a full function-by-function list is unnecessary. In *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (11th Cir. 2005), the Eleventh Circuit found that the ALJ only needs to take into account the limitations for which there are support. *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003), took a similar approach, upholding a decision by an ALJ which made explicit findings in only four of the seven functions. The court in *Depover* held that this was acceptable because the ALJ implicitly found that the claimant had no limitations in the other three areas. 349 F.3d at 367.

It is not necessary for me to decide whether a full function-by-function analysis is a requirement or if the ALJ need only discuss the specific limitations of the claimant, because neither has been satisfied here. The ALJ did not make findings with respect to Tafoya's specific limitations as to walking, standing, sitting, pushing, pulling, carrying, or lifting. The ALJ did not even meet the more relaxed requirements of *Bayliss* and *Depover,* because there is no discussion of a single functional limitation. The absence of findings cannot indicate an implied finding that Tafoya has no limitations, as they did in *Depover*, either, since the ALJ found that she could only perform light work. In making a "light" exertional limitation, he is implicitly finding that she does have some functional limitations.

The opinion does contain a through recitation of Tafoya's medical treatment, but the portion that pertains to the RFC determination is minimal. The ALJ recounted part of her testimony which indicated she did work around the house and he reviewed her mental health history. (A.R. at 17.) He then found that she was not credible because objective medical tests did not show an impairment and that she "exaggerated her symptoms with moans and groans at physical examinations." (A.R. at 17.) Based on that, he concluded that Tafoya was in some pain but still able to perform light work. (*Id.*) However, the leap to light work is not in conjunction with a discussion of even a single

15

limitation such as "standing," "sitting," or "pushing."

The Commissioner argues that the ALJ made note of the medical evidence of Tafoya's physical examinations, her testimony regarding her pain, her limited weight loss, and the suggestion by several doctors that she exercise. (Doc. 17 at 4.) According to the Commissioner, "[s]uch evidence supports the exertional limitations." (*Id*.) Again, though, *how* it supports the specific RFC is the question. I am left guessing as to the ALJ's logic, which requires me to reverse and remand.

Since I have identified a legal error in the formulation of Tafoya's RFC, I need not continue to address Tafoya's final challenge to the substance of the determination. I will, however, address two additional claims and make findings regarding how the ALJ should proceed on remand.

## II. Findings: Past Relevant Work and Additional Medical Records

In addition to the error at phase one, Tafoya challenges the ALJ's decisions at phase two of step four, as well as the Appeals Council's decision not to review Dr. Crawford's March 2010 evaluation. I find merit in both of these arguments, and although I have already decided to reverse and remand for further consideration, I will make additional findings with respect to the following issues.

### *A. Assessment of Tafoya's Past Relevant Work*

The ALJ also erred in carrying out the second phase of step four in the sequential evaluation process. At phase two, ALJ must "make findings regarding the physical and mental demands of the claimant's past relevant work." *Winfry*, 92 F.3d at 1024. *See also* 20 C.F.R. §§ 404.1520, 416.920. It is permissible for an ALJ to rely on the testimony of a VE when making this finding, but he may not delegate the analysis of a claimant's past relevant work to a VE. *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003.) The distinction between reliance and delegation is an important one. *See generally Harmon v. Astrue*, No. CIV-09-683-D, 2010 U.S. Dist. LEXIS 26880, *11 (W.D. Okla.

Feb. 2010) (reversing ALJ because he delegated the analysis to the VE); *O'Dell v. Astrue*, No. 08-4128-JAR-GBC, 2009 U.S. Dist. Lexis 115654 (D. Kan. Nov. 18, 2009) (comparing *Winfry* and *Doyal* and reversing ALJ's for improper use of VE testimony at phase two). In *Winfry*, the court clarified that while at step five it is acceptable to relate the claimant's impairments to the VE and ask whether, in his opinion, there are jobs the claimant can perform, this method may not be used at step four. *Winfry*, 92 F.3d at 1025. This is because, "[w]hen . . . the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review." *Id.* A fellow district court, interpreting *Winfry*, held that it is not "enough for the ALJ to make inquiry of the vocational expert about Plaintiff's past relevant work and to question if a person with Plaintiff's RFC could perform that past work, the ALJ's decision must reflect her reliance on the specific information provided by the vocational expert." *Harmon,* 2010 U.S. Dist. LEXIS 26880 at *11.

In *Doyal*, however, the ALJ only relied on the testimony of the VE; he quoted the VE's testimony approvingly in support of his own findings. 331 F.3d at 761. The Tenth Circuit approved of this use of VE testimony and distinguished it from the rule in *Winfry* because the ALJ was relying on specific pieces of information supplied by the VE. *Id.*

Here, the ALJ delegated the assessment to the VE improperly. He did not make any findings regarding Tafoya's relevant past work as a housekeeper; instead, he solely referenced the VE's January 6, 2010, testimony. This reference embodies the delegation of which *Winfry* warns and not the reliance permitted in *Doyal*. Just as in *Harmon,* which applied the *Winfry* rule*,* the ALJ invokes no independent findings, facts, or information; he only mentions that the VE concluded that housekeeping was "light in exertional demands." (A.R. 18.) His findings regarding the exertional requirements of Tafoya's past work totals one sentence in the eight page opinion.

The testimony from the VE on which the ALJ hangs his hat is also minimal. In addition to

17

asking the VE her name and her title, he only asked her if she had reviewed Tafoya's records, if she could define the exertional demands of a housekeeper, and if a hypothetical individual with a capacity for light work could perform those duties. (A.R. at 40-41.) The VE's answers were similarly terse. In describing the exertional demands of housekeeping, she replied that the job was a "SVP two, unskilled, light" (A.R. at 41.) In responding to the hypothetical she said "Yes." The VE provides no other information to explain her determinations, thus indicating that the ALJ impermissibly relied on an assessment which took place in her head, not on the record. *Winfry*, 92 F.3d at 1025. The ALJ could not "quote approvingly" the VE's testimony as in *Doyal* because the VE provided almost nothing to quote.

In failing to make findings regarding the exertional and non-exertional requirements of housekeeping, the ALJ erred. Upon remand, I instruct the ALJ to make findings regarding the functional requirements of Tafoya's past relevant work as she performed it.

### B. Consideration of Additional Evidence

The Appeals Council must consider newly submitted evidence, not available to the ALJ, if it is new, material, and related to the time period of or prior to the ALJ's decision. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (citations omitted). Evidence is new if it is not duplicative or cumulative and material if the evidence would have a reasonable probability of changing the outcome. *Id.* (citations omitted). To be pertinent, the evidence must relate to the time period for which benefits were denied. *Boone v. Apfel*, No. 98-7176, 189 F.3d 477 (Table), at *2 (10th Cir. Aug. 26, 1999) (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir. 1991)). The reviewing court determines *de novo* whether the Appeals Council properly rejected new evidence as non-qualifying. *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (citation omitted). If the Appeals Council fails to consider qualifying new evidence, the case should be remanded for further

consideration. *Threet*, 353 F.3d at 1191.

Tafoya submitted an impairment questionnaire completed by Dr. Crawford on March 21, 2010, to the Appeals Council on May 12, 2010. (A.R. at 430-437.) The Appeals Council denied Tafoya's request for review, finding that the information submitted was not a basis for changing the decision. (A.R. at 1-2.) I disagree. In reviewing the record and the evaluation by Dr. Crawford, I believe that it presents new information which is highly salient, and it relates to the time period for which benefits were denied.

First, the evaluation provides new evidence. Of the four hundred pages in the record, there is only one other medical evaluation which provides a function-by-function assessment of Tafoya's exertional and non-exertional impairments. (A.R. at 316-323.) This is the evaluation performed by Dr. Vining, a non-treating physician, on September 17, 2008, which the ALJ accorded little weight because there was newer evidence and testimony. (A.R. at 16.) Dr. Crawford, however, is a treating physician. He saw Tafoya approximately once every two months for a year, and he performed surgery on her spine. (A.R. at 431.) As a treating physician, his opinion is afforded more weight as a matter of law. *Washington v. Shalala*, 37 F. 3d 1437, 1441 (10th Cir. 1994.) In order to disregard the opinion of a treating physician, the ALJ must provide a detailed, specific reason, supported by evidence in the record. *Doyal*, 331 F.3d at 762; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The opinion is not only new because it is the only function by function analysis by a treating physician, but it is material because treating physicians are entitled to more weight.

Furthermore, Dr. Crawford's opinion directly conflicts with the ALJ's determination that Tafoya can perform light work. Dr. Crawford opined that Tafoya could only walk or stand for up to two hours and sit for up to two hours, lift and carry minimal weight, and could not stoop or bend. (A.R. at 433-34.) Dr. Crawford made this assessment after noting that physical and neurological

exams of Tafoya, which included strength tests, leg raises, X-rays, and MRIs (or "objective medical evidence"), all revealed minimal limitations. For Dr. Crawford to view the same "objective medical evidence" as the ALJ, which shows no indication of severe pain, but still come to a contrary conclusion is an important piece of information which deserves consideration. It might cast new light on how the ALJ views Tafoya, her credibility, and her assertions of pain.

Additionally, the evidence relates to the time period for which benefits were denied. Although performed several days after the ALJ made his decision, Dr. Crawford attested that the limitations had existed since "mid 2009." (A.R. at 436.) This is within the relevant time period. I find that the Appeal's Council erred in failing to consider this medical evidence, and that upon remand, the ALJ should review it in a manner consistent with my findings.

### CONCLUSION

The ALJ erred in his review of Tafoya's applications for Disability Insurance Benefits and Supplemental Security Income payments. While he recounted the medical evidence throughly, his analysis and findings regarding Tafoya's RFC and her past relevant work is lacking. Additionally, the Appeals Council erred in failing to consider the evaluation of Dr. Crawford, which would provide new and useful information in making an RFC assessment. I therefore REVERSE and REMAND this case for further proceedings consistent with this opinion.

IT IS SO ORDERED.

*William P. Lynch*
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.